NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENYADA GASTON, | : |
|       Plaintiff, | : Civil Action No. 11-5605 (DMC) |
| v. | : OPINION |
| COMMISSIONER OF DEPT. OF CORRECTIONS, et al., | : |
|       Defendants. | : |

APPEARANCES:

Plaintiff pro se
Kenyada Gaston
Northern State Prison
Newark, NJ 07114

**CAVANAUGH**, District Judge

    Plaintiff Kenyada Gaston, a prisoner confined at Northern State Prison at Newark, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on February 17, 2010, while he was confined at South Woods State Prison, the state of New Jersey was under a state of emergency due to weather conditions. Nevertheless, Plaintiff alleges that at 4:30 a.m., on that date, Defendant Sgt. Gibson told Plaintiff to go to his prison work assignment, in another building, or be placed in segregation for failure to obey a direct order.

Plaintiff alleges that while going to work he slipped on ice. Plaintiff alleges that he lay on the wet ground for 20 minutes until a nurse arrived. Plaintiff alleges that the nurse arrived without medical equipment to treat a slip and fall victim.[1] Plaintiff alleges that two officers picked him up and took him to the extended care unit where he waited for medical treatment until the doctor arrived approximately four hours later that morning. Plaintiff alleges that the delay in medical treatment resulted in a lifetime of injuries. Plaintiff alleges that he has "other injuries" to his back and neck.

---

[1] Plaintiff does not describe the equipment he alleges the nurse should have brought, nor how such equipment would have been necessary and appropriate to treat a "slip and fall victim."

2

Plaintiff names as defendants the Commissioner of the New Jersey Department of Corrections, South Woods State Prison Administrator Karen Balicki, Chief Floyd, Sgt. Gibson, and the University of Medicine and Dentistry of New Jersey ("UMDNJ"). Plaintiff argues that the Commissioner failed to properly train and supervise Defendants Balicki, Floyd, and Gibson. Plaintiff contends that Administrator Balicki failed to properly train and supervise Defendants Floyd, Gibson, and UMDNJ. Plaintiff contends that Defendants Chief Floyd and Sgt Gibson violated his First,[2] Eighth, and Fourteenth Amendment rights by forcing him to go to work during such weather conditions. Plaintiff argues that UMDNJ and its employees failed to give him proper medical treatment, committed medical malpractice, and violated his Eighth and Fourteenth Amendment rights.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C.

---

[2] The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Nothing in the facts alleged in this Complaint raises a First Amendment claim.

§ 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106

> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

5

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. <u>See</u> <u>Phillips</u>, 515 F.3d at 234-35. As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

6

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV. ANALYSIS

### A. Previously Litigated Claims

This is Plaintiff's second civil rights action asserting claims arising out of his slip on the ice on February 17, 2010. See Gaston v. Balicki, Civil No. 10-4316 (JBS). In Civil Action No. 10-4316, Plaintiff asserted claims (1) against Administrator Karen Balicki, Chief Floyd, and Sgt. Gibson for failure to clear the snow and ice, (2) against Administrator Balicki for failure to have medical personnel in closer proximity to the location of the fall, and (3) against UMDNJ for failure to provide adequate medical care.

By Opinion and Order [5, 6] entered May 12, 2011, this Court dismissed that Complaint for failure to state a claim and granted Plaintiff leave, within 30 days thereafter, to move to re-open and file an amended complaint, if he could overcome the deficiencies in that Complaint. Plaintiff neither moved to re-open and amend nor filed an appeal. Instead, Plaintiff submitted a new Complaint, dated June 6, 2011.

To the extent Plaintiff intended this new Complaint in this action to be a proposed amended complaint in Civil Action No. 10-4316, it fails to overcome the deficiencies of that complaint. To the extent Plaintiff intended the Complaint in this action to

8

be a new Complaint, and insofar as the claims asserted here are the same claims asserted previously against the same defendants, the doctrine of res judicata precludes their relitigation here. See, e.g., Marin v. Department of Defense, 145 Fed.Appx. 754, 2005 WL 2009027 (3d Cir. Aug. 23, 2005) (dismissing, as frivolous, appeal by in forma pauperis appellant of District Court's dismissal of previously-litigated claims on basis of doctrine of res judicata).

In any event, to the extent not barred by the doctrine of res judicata, the claims asserted here fail to state a claim.

B.  The Work Requirement

Plaintiff alleges that he was required to go outside to get to work, in icy conditions, in violation of his rights under the Eighth and Fourteenth Amendments.

Inmates have no constitutional right not to work while imprisoned after conviction. See Ali v. Johnson, 259 F.3d 317, 317-18 (5th Cir. 2001) Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

The Eighth Amendment proscription against cruel and unusual punishments prohibits only work assignments that compel a prisoner to perform physical labor beyond his strength, that endanger his life or health, that cause undue pain, or that are punitive in nature. See Johnson v. Townsend, 314 Fed.Appx. 436, 440-41 (3d Cir. 2008). Here, Plaintiff does not challenge the

9

work assignment, itself, but only the requirement that he walk through icy conditions on the morning of February 17, 2010, to get to the work assignment. This is not sufficient to state a claim under the Eighth Amendment. Slippery conditions resulting from winter snow and ice are a hazard shared by the general public and do not give rise to an Eighth Amendment claim for unconstitutional conditions of confinement. Cf. Dial v. Murphy, 54 F.3d 776, 1995 WL 293888 (6th Cir. 1995) (unpubl.) (mere negligence by prison officials which results in an inmate's fall on ice fails to state an Eighth Amendment claim); White v. Tyszkiewicz, 27 Fed.Appx. 314 (6th Cir. 2001) (same). This claim will be dismissed with prejudice.

Plaintiff's Fourteenth Amendment due process claim fares no better. A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or State law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S.

10

236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose

11

"atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).

The requirement that Plaintiff walk through snow and ice to another building to report to his work assignment does not exceed his sentence in a manner to give rise to the protection of the Due Process Clause, nor does that requirement subject Plaintiff to "atypical and significant hardship" that might give rise to a state-created liberty interest. Accordingly, these facts do not state a claim for violation of the Due Process Clause. Cf. Johnson v. Townsend, 314 Fed.Appx. 436, 439-41 (3d Cir. 2008) (no due process violation based upon requirement that, under threat of misconduct, prisoner work as a kitchen clerk for 9 and one-half hours a day, seven days a week, while only being paid for forty hours).

This claim will be dismissed with prejudice.

C.   The Medical-Care Claim

Plaintiff alleges in conclusory terms that he received inadequate medical care and that he has permanent injuries from his fall.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against

12

cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. <u>Id.</u> at 106.

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

The second element of the <u>Estelle</u> test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent

to reckless disregard of a known risk of harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. <u>Andrews v. Camden County</u>, 95 F.Supp.2d 217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>, 551 F.Supp. 137, 145 (D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge

14

of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted).

Here, Plaintiff has failed utterly to describe his injuries; thus, he has failed to plead that he suffered from a "serious medical need."  In addition, Plaintiff has failed to describe what medical care he did receive or that he contends he should have received.  Nothing in the facts presented suggests that the time it took him to receive care – 20 minutes at the site of the fall and four hours while awaiting the arrival of the doctor - resulted from any deliberate indifference on the part of UMDNJ or anybody else.  Nor does Plaintiff allege any facts suggesting the

15

the time it took to receive care caused any continuing injury. Plaintiff has failed completely to allege any facts from which "deliberate indifference" could be inferred.

As this is the second time that Plaintiff has attempted to assert an Eighth Amendment medical-care claim based upon the care he received for this fall, the claim will be dismissed with prejudice and without leave to amend further.

D.  The Failure to Supervise Claims

Finally, Plaintiff alleges that the Commissioner of Corrections and Administrator Balicki have failed to properly supervise the other named defendants.

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," City of Canton v. Harris, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable, Id.  Here, however, Plaintiff fails to state a claim for a constitutional injury; thus, he fails to state a claim for failure to train.

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than

> a faulty training program. ... Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training ... . Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

Id. at 390-91. Here, Plaintiff alleges nothing more than that a single particular incident involving only a few individuals caused him an injury, plainly an insufficient allegation upon which to base liability for failure to train. Accordingly, Plaintiff's failure to train claim must be dismissed for failure to state a claim.

E.   Pendent State-Law Claims

Finally, Plaintiff alleges that UMDNJ committed medical malpractice in treating the injuries from his fall. This is a state-law claim.

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim. The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted). As no such extraordinary

17

circumstances appear to be present, this Court will dismiss the state law claim without prejudice.

## V. CONCLUSION

For the reasons set forth above, the constitutional claims will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 19973, for failure to state a claim, and the pendent state law medical malpractice claim will be dismissed without prejudice for lack of jurisdiction. No further leave to amend will be granted.

An appropriate order follows.

                                                                    _____
                                                                    Dennis M. Cavanaugh
                                                                    United States District Judge

Dated: 4/27/12